# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY CLEVELAND,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THOMAS C. HUNTON, et al.,<br><br>　　　　Defendants. | Case No. 1:16-cv-01732-AWI-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS AND DEFENDANTS FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 12)<br><br>OBJECTIONS DUE WITHIN TWENTY DAYS |

On November 16, 2016, Plaintiff Timothy Cleveland ("Plaintiff"), proceeding pro se and in forma pauperis, filed this civil rights action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), which provides a remedy for violation of civil rights by federal actors. (ECF No. 1.) On December 19, 2016, the complaint was screened and dismissed for failure to state a claim. (ECF No. 6.) Plaintiff was granted leave to file an amended complaint within thirty days. On January 25, 2017, Plaintiff filed a first amended complaint which was stricken from the record because it was not signed. (ECF Nos. 7, 8.) On February 2, 2017, Plaintiff filed a first amended complaint that was screened and dismissed for failure to state a claim. (ECF No. 10, 11.) On March 14, 2017, Plaintiff filed the second amended complaint that is currently before the Court. (ECF No. 12.)

/ / /

1

I.

**SCREENING REQUIREMENT**

The district court must perform a preliminary screening and must dismiss a case if at any time the Court determines that the complaint fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners). In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the pro se complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

II.

**SECOND AMENDED COMPLAINT ALLEGATIONS**

Plaintiff is a Tribal African American and brings this action against Defendants Thomas Vilsack, Thomas Hunton, Oscar Gonzales, and Carl Martin-Ruiz. (Sec. Am. Compl. 1, ECF No. 12.) Plaintiff alleges violations of the Equal Credit Opportunity Act, the Administrative Procedures Act, Title VI of the Civil Rights Act of 1964, Executive Orders 12875 and 12898, the National Environmental Policies Act, and the Tucker Act and seeks a determination under the

Takings Clause of the Fifth Amendment that the complaint is appropriate to forward to the Federal Court of Claims. (Sec. Am. Compl. 1.) Plaintiff's second amended complaint sets forth causes of action for the Equal Credit Opportunity Act, the Administrative Procedures Act, and Title VI of the Civil Rights Act of 1964 which generally contain conclusory allegations of wrong doing by the various defendants.

Based on the allegations in the complaint, Plaintiff received a micro loan in the amount of $15,000 from the Farm Services agency in 2014 and Defendant Hunton, a Farm Service Agency Senior Loan Officer, knew or should have known that the term of loan may exceed 18 months in unusual situations such as establishing a new enterprise. (Sec. Am. Compl. 2.) Prior to signing the loan documents, Defendant Hunton told Plaintiff that the regulations only allowed a maximum of 18 months for loan terms. (Sec. Am. Compl. 2.) Plaintiff later discovered that this information was false. (Sec. Am. Compl. 2.) Plaintiff's property and personal credit were damaged as a result of the deprivation of the opportunity to develop livestock for the production of egg products to sell. (Sec. Am. Compl. 2.)

Plaintiff filed an appeal of the decision to terminate his loan which was heard by National Appeals Division Administrative Judge Caroline Pyrz. (Sec. Am. Compl. 2.) Defendant Hunton had reported a land value of zero for Plaintiff's property. (Sec. Am. Compl. 2.) Defendant Hunton failed to demonstrate such a land valuation. (Sec. Am. Compl. 2.) Judge Pyrz determined that the Agency action to terminate Plaintiff's loan was not erroneous. (Sec. Am. Compl. 2.)

Plaintiff alleges that Defendants Martin-Ruiz and Gonzales used Plaintiff's proprietary information for public use without compensation. (Sec. Am. Compl. 2-3.) Defendants Martin-Ruiz and Gonzales did not compensate or identify Plaintiff's business in NPR USDA Outreach story when performing USDA African American outreach activities from April 2016 to September 2016. (Sec. Am. Compl. 3.) Plaintiff provided scientific data from the National Institute of Health, University of California Los Angeles Nephrology Department on the incidence of chronic kidney disease in association with the 2007 and 2012 census for agriculture that indicated no African American participation in Kern County. (Sec. Am. Compl. 3.)

Plaintiff alleges this information provided abundant documentary evidence of the disparate impact of the Farm Services Agency under the authority of Defendant Vilsack. (Sec. Am. Compl. 3.)

Plaintiff contends that the Farm Service Agency failed to investigate Plaintiff's complaints. (Sec. Am. Compl. 3.) Plaintiff is continuing to be deprived of his right to provide agricultural products and services to the African American community due to discrimination by the USDA office located in Kern County, California. (Sec. Am. Compl. 3.) This creates a public health risk to Plaintiff and the African American community. (Sec. Am. Compl. 3.) Plaintiff is seeking $3 million for the failure to investigate the public health risk of chronic kidney disease due discrimination against African Americans. (Sec. Am. Compl. 3.) The current African American participation rate in California is .03 percent. (Sec. Am. Compl. 3.)

In March 2016, National Appeals Division Administrative Judge Justin Oliver issued a final determination finding that the adverse decision was erroneous. (Sec. Am. Compl. 4.) Plaintiff alleges that Defendant Gonzales failed to act following the final determination. (Sec. Am. Compl. 4.) Due to the failure to act, Plaintiff contends he has suffered extensive property damage, damage to his personal credit rating, and an inability to participate in USDA loan programs. (Sec. Am. Compl. 4.) The Farm Service Agency has continued to decline consideration of any loan application from Plaintiff on the ground that 7 C.F.R. 764.401(b)(1) "prohibits FSA loan officials from making a loan if the operation plan is not feasible." (Sec. Am. Compl. 4.)

## III.
## DISCUSSION

Plaintiff sets forth three causes of action in his second amended complaint: violation of the Equal Credit Opportunity Act, Title VI of the Civil Rights Act of 1964, and the Administrative Procedures Act and seeks for the Court to determine that this action is appropriate to be heard in the Federal Court of Claims.

**A.   Takings Clause of the Fifth Amendment**

Plaintiff alleges that Defendants Martin-Ruiz and Gonzales used Plaintiff's proprietary

4

1  information for public use without compensation. (Sec. Am. Compl. 2-3.) The Fifth
2  Amendment provides that "private property [shall not] be taken for public use, without just
3  compensation. The Takings Clause of the Fifth Amendment 'limits the government's ability to
4  confiscate property without paying for it,' and "is designed to bar Government from forcing
5  some people alone to bear public burdens which, in all fairness and justice, should be borne by
6  the public as a whole." Vance v. Barrett, 345 F.3d 1083, 1089 (9th Cir. 2003) (internal
7  quotations and citation omitted).

8  Although in the two prior orders dismissing Plaintiff's complaints for failure to state a
9  claim, he has been advised that he must state the specific facts on which he states his claims,
10 Plaintiff has not identified any propriety information on which he bases his takings claim.
11 Plaintiff states that Defendants Martin-Ruiz and Gonzales did not compensate or identify
12 Plaintiff's business in NPR USDA Outreach story when performing USDA African American
13 outreach activities from April 2016 to September 2016. (Sec. Am. Compl. 3.) However, the
14 failure to identify Plaintiff's business does not demonstrate a taking of private property for public
15 use.

16 Plaintiff also states that he provided scientific data from the National Institute of Health,
17 University of California Los Angeles Nephrology Department on the incidence of chronic kidney
18 disease in association with the 2007 and 2012 census for agriculture that indicated no African
19 American participation in Kern County. (Sec. Am. Compl. 3.) The Supreme Court has
20 recognized that a property right protected under the Fifth Amendment can exist for health, safety,
21 and environmental data that is cognizable as a trade secret property right under state law.
22 Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1003 (1984). However, "[i]formation that is public
23 knowledge or that is generally known in an industry cannot be a trade secret." Ruckelshaus, 467
24 U.S. at 1002. Therefore, Plaintiff does not have a propriety interest in scientific data published
25 by the National Institute of Health, University of California Los Angeles Nephrology
26 Department or census data.

27 Plaintiff has failed to identify any of his private property that was taken for public use.
28 Plaintiff has failed to state a cognizable claim under the Takings Clause of the Fifth Amendment.

## B.     Equal Credit Opportunity Act, 15 U.S.C. § 1691

Plaintiff's first cause of action alleges a violation of the Equal Credit Opportunity Act. The Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, provides that it is illegal to discriminate against an applicant with respect to a credit application. 15 U.S.C. § 1691(a). Liberally construed, Plaintiff's complaint alleges that he has been denied credit by the Farm Services agency. Plaintiff's complaint alleges racial discrimination and failure to find plaintiff a socially disadvantaged applicant.

Under the ECOA, it is illegal to discriminate against a credit applicant "(1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract); (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a). To prevail on a claim of discrimination under the ECOA, the plaintiff must prove that the denial of the credit application was because of his race, color, religion, national origin, sex or marital status, or age. Shiplet v. Veneman, 620 F.Supp.2d 1203, 1232 (D. Mont. 2009), aff'd, 383 F. App'x 667 (9th Cir. 2010).

Plaintiff's complaint is devoid of any factual allegations that the denial of his loan application was due to his race or social economic status. Specifically, the complaint alleges that Plaintiff's loan application was denied on the ground that 7 C.F.R. 764.401(b)(1) "prohibits FSA loan officials from making a loan if the operation plan is not feasible." (Sec. Am. Compl. 4.) Plaintiff's conclusory allegations of discrimination are not sufficient for the court to infer that any named defendant acted with discriminatory intent in this action.

Plaintiff also states that scientific data from the National Institute of Health, University of California Los Angeles Nephrology Department on the incidence of chronic kidney disease in association with the 2007 and 2012 census for agriculture that indicated no African American participation in Kern County is abundant documentary evidence of the disparate impact of the Farm Services Agency under the authority of Defendant Vilsack. (Sec. Am. Compl. 3.)

To state a disparate impact claim, "a plaintiff must adequately plead: (1) a specific and clearly delineated practice or policy adopted by a defendant, (2) a disparate impact on a protected

6

group, and (3) facts demonstrating a causal connection between the specific challenged practice or policy and the alleged disparate impact. Nat'l Ass'n for Advancement of Colored People v. Ameriquest Mortg. Co., 635 F. Supp. 2d 1096, 1103 (C.D. Cal. 2009), as amended (Jan. 13, 2009). It is not sufficient to raise an inference of discrimination, a "plaintiff "must actually prove the discriminatory impact at issue." Stout v. Potter, 276 F.3d 1118, 112w (9th Cir. 2002) (quoting Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir.1990)). Plaintiff has failed to identify any specific policy or practice of the Farm Services Agency that resulted in disparate impact to African Americans. Ramirez v. GreenPoint Mortg. Funding, Inc., 633 F. Supp. 2d 922, 928 (N.D. Cal. 2008) ("challenging subjective practices does not relieve a plaintiff from identifying a specific policy or practice that allegedly results in a disparate impact").

Plaintiff fails to state a cognizable claim for violation of the ECOA.

**C.    Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d**

Plaintiff's second cause of action alleges violations of Title VI of the Civil Rights Act of 1964. Pursuant to 42 U.S.C. § 2000d, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." A "program or activity" is defined as an agency of a State or a local government that is extended Federal financial assistance. 42 U.S.C. § 2000d-4a.

As Plaintiff was previously advised, courts have held that Title VI does not create a cause of action against the federal government or waive the government's sovereign immunity. Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180, 191 (4th Cir. 1999); Dorsey v. U.S. Dep't of Labor, 41 F.3d 1551, 1555 (D.C. Cir. 1994); Thompson v. U.S. Dep't of Hous. & Urban Dev., 348 F.Supp.2d 398, 423 (D. Md. 2005). The Court takes judicial notice that the Farm Service Agency is an agency of the United States Department of Agriculture. See United States Department of Agriculture, Farm Services Agency website located at https://www.fsa.usda.gov/. Here, Plaintiff's suit is brought against a federal agency and employees of the federal agency. Plaintiff's claims against agencies and employees of the United States government are not cognizable under 42 U.S.C. § 2000d.

7

**D.     Administrative Procedures Act, 5 U.S.C. § 551 et seq.**

Plaintiff's third cause of action is brought under the Administrative Procedures Act, 5 U.S.C. § 551 et seq. The Administrative Procedures Act provides that "any person who is 'adversely affected or aggrieved' by agency action; including a 'failure to act,' is entitled to 'judicial review thereof,' as long as the action is a 'final agency action for which there is no other adequate remedy in a court[.]' " Heckler v. Chaney, 470 U.S. 821, 828 (1985).

### 1.     Farm Agency Decision Denying Farm Loan

Plaintiff references a March 2016 determination by Administrative Judge Justin Oliver. From what can be ascertained in the complaint, it appears that Plaintiff appealed the denial of a farm loan and the administrative law judge reversed and remanded to the agency. Upon remand the agency has asserted that the basis of the reversal was that there was a need to "verify the non-farm income and 1890 Land Grant students' educational services." (Sec. Am. Compl. 4.) Plaintiff's loan has thereafter been denied because his operation plan has been found to be not feasible. (Sec. Am. Compl. 4.) Plaintiff is seeking monetary relief for damages. (Sec. Am. Compl. 4.)

To the extent that Plaintiff is seeking review of the Farm Agency decision not to approve a loan after the remand from the administrative decision, this is not a final agency decision. The complaint states that the administrative law judge remanded the matter and Plaintiff has not alleged that any subsequent denial of his loan has been appealed and a final agency decision issued. Therefore, this Court does not have jurisdiction to review the decision denying Plaintiff's application for a farm loan. Plaintiff has failed to state a claim for the denial of his application for a farm loan under the Administrative Procedures Act.

### 2.     Decision to Accelerate Plaintiff's 2014 Farm Loan

Plaintiff also alleges that there was an adverse agency decision that was affirmed by Administrative Law Judge Caroline Pyrz. While the allegations in Plaintiff's second amended complaint are far from clear, liberally construed, Plaintiff's allegations are as follows.

Plaintiff received a 2014 micro loan in the amount of $15,000 and was allowed a maximum of 18 months to pay off the loan. (Sec. Am. Compl. 2.) Plaintiff contends that the

8

regulations allow the loan term to exceed 18 months where the applicant is establishing a new enterprise. (Sec. Am. Compl. 2.) Plaintiff was attempting to develop a poultry farm to sell egg products. (Sec. Am. Compl. 2.) The USDA accelerated Plaintiff's 2014 loan. (Sec. Am. Compl. 2.) The final determination by Judge Pyrz concluded that the USDA decision to accelerate Plaintiff's 2014 loan was not erroneous. (Sec. Am. Compl. 2.) Plaintiff has been damaged by having his personal credit damaged and being deprived of the opportunity to develop his poultry farm. (Sec. Am. Compl. 2.) Plaintiff seeks declaratory relief against the USDA collection action. (Sec. Am. Compl. 2.)

The United States has waived sovereign immunity for judicial review of an agency decision in which the movant is seeking injunctive relief. 5 U.S.C. § 702. The Ninth Circuit has held that "the waiver of sovereign immunity applies in 'all actions seeking relief from official misconduct except for money damages.' " Doe v. Hagee, 473 F.Supp.2d 989, 999 (N.D. Cal. 2007) (quoting Presbyterian Church (U.S.A.) v. United States, 870 F.2d 518, 525 (9th Cir.1989)). At the pleading stage, Plaintiff's allegations regarding the decision to accelerate his 2014 loan are sufficient to require the defendant file an answer to the second amended complaint.

The APA allows a claim alleging "an agency or an officer or employee thereof acted or failed to act in an official capacity." 5 U.S.C. § 702. In this action, Plaintiff had alleged that Defendant Hunton is the Senior Loan Officer in the Bakersfield Office.[1] The Court recommends that this action proceed against Defendant Hunton in his official capacity on the Administrative Procedures Act claim.

### E. Executive Orders

Plaintiff also alleges that the defendants violated Executive Order 12875 and 12898.[2] "As a general rule, 'there is no private right of action to enforce obligations imposed on

---

[1] The Court takes judicial notice of the United States Department of Agriculture website showing that Mr. Hunton is the Farm Loan Manager in Bakersfield. United States Department of Agriculture Service Center Locator, https://offices.sc.egov.usda.gov/locator/app?service=page/ServiceCenterSummary&stateCode=06&cnty=029.

[2] Plaintiff also alleges a violation of Executive Order 12875, however this order provided that it was "intended only to improve the internal management of the executive branch and is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person." Enhancing the Intergovernmental Partnership, 58 FR 58093, 1993 WL 13149668 (Oct. 26, 1993). The order was revoked on August 4, 1999. Id.

9

executive branch officials by executive orders.' " Chen Zhou Chai v. Carroll, 48 F.3d 1331, 1338 (4th Cir. 1995) (quoting Facchiano Constr. Co. v. United States Dep't of Labor, 987 F.2d 206, 210 (3d Cir.), cert. denied, 510 U.S. 822 (1993)). An executive order is privately enforceable only where it was intended to create a private cause of action. Chen Zhou Chai, 48 F.3d at 1339.

Executive Order 12898 specifically provides "[t]his order is intended only to improve the internal management of the executive branch and is not intended to, nor does it create any right, benefit, or trust responsibility, substantive or procedural, enforceable at law or equity by a party against the United States, its agencies, its officers, or any person. This order shall not be construed to create any right to judicial review involving the compliance or noncompliance of the United States, its agencies, its officers, or any other person with this order." Federal Actions To Address Environmental Justice in Minority Populations and Low-Income Populations, 59 FR 7629, 7632-33 (Feb. 11, 1994). Executive Order 12898 does not create a private right of action. Coliseum Square Ass'n, Inc. v. Jackson, 465 F.3d 215, 232 (5th Cir. 2006); Latin Americans for Soc. & Econ. Dev. v. Adm'r of Fed. Highway Admin., 756 F.3d 447, 465 (6th Cir. 2014), cert. denied sub nom. Detroit Int'l Bridge Co. v. Nadeau, 135 S. Ct. 1411 (2015). Therefore, Plaintiff may not bring a claim in this action based upon violation of Executive Order 12898.

### F. Tucker Act, 28 U.S.C. § 1491

Plaintiff invokes section 1491 of the Tucker Act which provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. The federal government is entitled to sovereign immunity and the federal government or its agencies cannot be sued without its consent. F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994); United States v. Navajo Nation, 556 U.S. 287, 289 (2009). The Tucker Act does not create substantive rights, but is simply a jurisdictional provision that waives sovereign immunity for claims based on other sources of law. Navajo Nation, 556 U.S. at 290. Plaintiff seeks a determination that the

1  allegations in his complaint are appropriate to forward to the Court of Federal Claims.

2  "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States, and the claimant must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.' " United States v. Mitchell, 463 U.S. 206, 216–17 (1983) (citations omitted). The Court of Appeals for the Federal Circuit has identified three types of monetary claims over which the United States Court of Federal Claims has jurisdiction: 1) "claims alleging the existence of a contract between the plaintiff and the government;" 2) "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum[;]" and 3) where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Veasey v. United States, 122 Fed.Cl. 584, 590 (2015) (citations omitted). This third type of claim requires that "the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Veasey, 122 Fed.Cl. at 590 (citations omitted). To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "can fairly be interpreted as mandating compensation by the Federal Government." Id. (citations omitted).

The complaint does not include any allegations from which the Court could conclude that any of the three types of monetary claims over which the Court of Federal Claims has jurisdiction are at issue here. Liberally construing the complaint, Plaintiff received a loan for 2014 which he defaulted on and is seeking declaratory relief against the USDA collection action. Further, Plaintiff has applied for subsequent loans that have been denied.

Plaintiff has alleged no facts that he is suing to obtain compensation based upon a contract between himself and the government. Plaintiff has not alleged that he has paid to the government any money that he is seeking to have returned. Finally, while Plaintiff is seeking to have the government pay him monies under the Farm Loan Program, he has not shown that he has a right to a certain sum. While the complaint alleges that Plaintiff is seeking some type of funding from the government, the complaint fails to identify any statute or provision of law that

would mandate that the Government provide him with funding or that he is entitled to a certain sum from the government. Plaintiff fails to state a cognizable claim under the Tucker Act.

### G. National Environmental Policy Act, 42 USC § 4321 et seq.

Plaintiff also references the National Environmental Policy Act ("NEPA"), 42 USC § 4321 et seq., which was enacted "to declare a national policy which will encourage productive and enjoyable harmony between man and his environment." 42 U.S.C. § 4321. The purpose of the NEPA is to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; to enrich the understanding of the ecological systems and natural resources important to the Nation." 42 U.S.C. § 4321. The NEPA does not have any substantive requirements that would dictate a particular result, but "is aimed at ensuring agencies make informed decisions and 'contemplate the environmental impacts of [their] actions.' " Nat. Res. Def. Council, Inc. v. Winter, 645 F.Supp.2d 841, 847 (C.D. Cal. 2007) (quoting Idaho Sporting Congress v. Thomas, 137 F.3d 1146, 1149 (9th Cir.1998).

The allegations in the complaint relating to the actions of the Farm Services Agency in this action do not implicate the protections of the NEPA. Plaintiff has failed to state a plausible claim that the actions alleged in the complaint would violate the NEPA.

### H. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend his pleading once as a matter of course at any time before a responsive pleading is served. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend only by leave of the court or by written consent of the adverse party, and leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). In determining whether to grant leave to amend, the court considers five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004). The factors are not given equal weight and futility alone is sufficient to justify the denial of a motion to amend. Washington v. Lowe's HIW Inc., 75 F. Supp. 3d 1240, 1245 (N.D. Cal. 2014), appeal dismissed (Feb. 25, 2015).

In this instance, Plaintiff has been provided with an opportunity to file two amended complaints with direction from the Court identifying the deficiencies in his pleadings. Plaintiff has now filed three complaints without curing the deficiencies in those claims which the Court has analyzed here. The Court finds that Plaintiff is unable to cure the deficiencies in the complaint and allowing further amendment of the complaint would be futile. Accordingly, the Court recommends that the claims be dismissed without leave to amend.

## IV.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. This action proceed against Defendant Hunton in his official capacity for declaratory relief on Plaintiff's Administrative Procedures Act claim regarding the decision to accelerate his 2014 loan;

2. The following claims be dismissed without leave to amend for failure to state a claim:

a. Plaintiff's Administrative Procedures Act claim based on the denial of his application for a loan;

b. Plaintiff's claims for violation of the Takings Clause of the Fifth Amendment, the Equal Credit Opportunity Act, Title VI of the Civil Rights Act of 1964, Executive Order 12875 and 12898, the Tucker Act, and National Environmental Policy Act; and

c. Defendants Thomas Vilsack, Oscar Gonzales, and Carl Martin-Ruiz be dismissed from this action.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty (20) days of service of this recommendation, Plaintiff may file written objections to these findings and recommendations with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. §

636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 24, 2017**

UNITED STATES MAGISTRATE JUDGE